IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELINDA HINSON,

        Plaintiff,

vs.                                          Case No. 08-4049-SAC

UMB BANK, N.A.,

        Defendant.

MEMORANDUM AND ORDER

This case is set for trial on June 16, 2010 on one claim only: that defendant violated 42 U.S.C. §1981 by Ms. Koerner and Mr. Michaelis's decision not to promote Plaintiff to the position of District Manager in 2005 because she is African American. This case comes before the Court on defendant's motion in limine, seeking to exclude plaintiff's reference at trial to the following: (1) evidence relating solely to Plaintiff's dismissed or abandoned claims; (2) evidence regarding the promotion of other UMB employees to regional positions; (3) alleged "stray remarks"; (4) evidence concerning allegations that Mr. Michaelis engaged in sexually harassing behavior; and (5) evidence of other African American employees' treatment and discrimination claims against the defendant.

Plaintiff responds that she has no intention of offering the following evidence: evidence of plaintiff's failure to receive a promotion in 2006 to a dual manager position that was never created; evidence of plaintiff's failure to receive training; evidence that Mr. Michaelis engaged in sexually harassing behavior; and a statement by non-

employee Mr. Vaughn. Accordingly, the defendant's motion shall be granted as unopposed as to those matters. The disputed evidence is discussed below.

**Plaintiff's constructive discharge**

Defendant was granted summary judgment on Plaintiff's constructive discharge claim. Both parties agree that the plaintiff should be able to testify, as background information that she is no longer employed by the defendant. Plaintiff seeks to explain the facts surrounding her separation from employment with the defendant, and agrees to a limiting instruction that she is not seeking damages for the constructive discharge.

Plaintiff has the burden to show that the relevance and probative value of the evidence outweighs the Rule 403 factors. The Court will permit the plaintiff to reference her separation from employment and to testify that her reason for leaving is related to her non-promotion, but cautions the parties that because the Court has found that the plaintiff was not "constructively discharged," that term should not be used.

**Promotions of others to regional positions**

Defendant seeks to prohibit evidence of its promotions of the following white persons: 1) Shawna Palmieri was promoted to Regional Treasury Management Officer in 2006; (2) Debbie Harding was promoted to Regional Customer Service Manager in 2005; (3) Ms. Koerner was promoted to Regional Manager in 2005; (4) Donovan Christian was promoted to Regional Auditor in 2006; and (5) Mr. Michaelis was promoted to Regional President in 2006. Dk. 42 at 18, ¶¶ 64-68. The Court noted in its summary judgment order that "no reasonable inference could be drawn from the facts of record that any of the five promotional decisions was based upon race." Dk. 46 at 21.

Defendant contends this evidence is irrelevant because the plaintiff never applied or sought promotion to a Regional Manager position, several of the regional promotions occurred a year later than the plaintiff's non-promotion in 2005, and no showing has been made that the plaintiff was similarly situated to those who received the promotions. The plaintiff contends that this evidence is relevant for another reason - to show that geographical experience was not a factor in determining promotions even of those promoted to regional management positions (since each of the five came from Topeka) but the plaintiff's lack of regional experience was cited by defendant as a factor in not promoting her to the district manager position. Defendant contends in the pretrial order that it selected Ms. Beran over the plaintiff for the District Manager position because Ms. Beran had banking experience in Central and Western Kansas. (Dk. 25, p. 6.)

The court understands the plaintiff's argument, but finds this evidence irrelevant to pretext because it relates solely to positions for which the plaintiff did not apply and to promotions made by persons other than the decision makers in this case and to positions which required qualifications different from those required in the District Manager position. Plaintiff seeks to show that because five persons promoted to Regional Manager positions came from Topeka, they lacked geographical experience, therefore geographical experience was not a valid criteria in her promotion. Because of the dissimilarities noted above, this conclusion reaches too far afield and requires speculation. The probative value of this evidence is negligible, if it exists at all. Additionally, the court finds that the probative value of this evidence is outweighed by its prejudicial effect. Even if the plaintiff showed that geographical experience was not a

determining factor for the five regional manager positions at issue, the defendant would be permitted to show the extent to which geographical experience was considered and why each successful applicant's other qualifications outweighed his or her lack of such experience. To engage in five mini-trials would confuse the jury and unduly delay this case. *See* Fed.R.Evid. 403. The parties shall thus be prohibited from admitting this evidence.

**Stray remarks**

Defendant seeks to keep out evidence that its Topeka Midtown Branch was referred to as the "ghetto branch." Plaintiff alleges that this statement was made by "all of the associates who worked there at midtown," at monthly Topeka meetings, as a reason for why they could not compete with other branches. Defendant contends that this evidence is a stray remark, is not tied to the plaintiff's non-promotion, and was not made by the decision makers, and that the Plaintiff worked at the Topeka North Branch as a Banking Center Manager and never worked at the Midtown Branch. Plaintiff contends that Ms. Koerner and Mr. Michaelis, the decisionmakers, were present at meetings where this comment was regularly made and adopted or condoned the statement by failing to suppress or reprimand it.

To show discriminatory animus based on discriminatory statements, plaintiff generally must show (1) that a decision-maker made the statements and (2) that the statements had a nexus to the adverse employment action. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531-32 (10th Cir.1994) (Plaintiff needs to show some correlation between the comments and the act; where evidence does not show the comments were

4

directed toward her, her position, or the automatic termination policy, there is no nexus.) "In general, statements by a non-decisionmaker...cannot be used to establish that a decision was tainted by discriminatory animus." *Cuenca v. Univ. of Kan.*, 101 Fed.Appx. 782, 788 (10th Cir. 2004). An exception exists, however, where "the record contains evidence from which a reasonable inference may be drawn that a decisionmaker adopted or relied upon the allegedly discriminatory statement" in making the adverse employment decision. *Id.*

Here, the plaintiff has not shown that the term "ghetto branch" is racially derogatory. But even assuming that the plaintiff made such a showing, the exception noted above is not met. No evidence tends to show that either Ms. Koerner or Mr. Michaelis even heard the statements, let alone adopted or relied on statements that the Midtown Branch was a ghetto branch in making the decision not to promote the plaintiff to a different branch. *See Stover v. Martinez*, 382 F.3d 1064, 1077-78 (10th Cir. 2004) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir.1994)) (to show animus, plaintiff must demonstrate nexus between allegedly discriminatory statements and defendant's adverse employment decision). Evidence does not show that the comments were directed toward the plaintiff, her position, her branch, or the promotion policy. Defendant's failure to disavow a statement made by others does not result in an inference that its decision makers took the statement into account when making their decision. *See Cuenca*, 101 Fed.Appx. at 788, 2004 WL 1328676, 4 (holding that the inferential burden runs the other way in such cases, as the plaintiff has the burden to link the statement to the decision.)

Even assuming that the proffered testimony had some probative value, its limited

5

probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Fed.R.Evid. 403. Accordingly, the defendant's motion shall be granted as to the "ghetto branch" comments.

**Treatment of and complaints by other employees**

Defendant contends that evidence about two former employees who filed wrongful termination complaints alleging race discrimination against the defendant is irrelevant, prejudicial, and hearsay. Apparently, Mr. Dah McBride told plaintiff after plaintiff resigned that he had filed a race-discrimination complaint against UMB based on his termination in 2005. Plaintiff says Mr. McBride told her that UMB was "out to get him" and did so by falsely writing him up and terminating his employment for taking an unauthorized vacation. Also, Ms. Norma Wright told Plaintiff that she had filed a race-discrimination complaint against UMB. The Court has no other facts regarding these matters.

Defendant contends that these employees had different supervisors, held positions different than did the plaintiff, worked at different branches and not with the plaintiff, alleged wrongful terminations and not failures to promote, so are not similarly situated to the plaintiff. Plaintiff counters that "if the defendant racially discriminated against employees in the past, it is more likely that the Plaintiff also faced discrimination," that the relevance of the evidence outweighs the danger of unfair prejudice, and that the discrimination complaints which were filed are not hearsay since they fall within the business records exception to that rule (apparently conceding that the plaintiff's testimony about their treatment or their complaints is hearsay.)

6

"Anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.' " *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir.2000) (quoting *Simms v. State of Okla.*, 165 F.3d 1321, 1330 (10th Cir.1999)). "Plaintiff can meet this requirement by showing that the same supervisors were involved in prior discriminatory employment actions." *Id.* Thus, in *Mendelsohn v. Sprint/United Management Co.,* 587 F.Supp.2d 1201, 1208 (D.Kan. 2008), the Court held that "me too" evidence within plaintiff's supervisory chain of command would be admissible, while "me too" evidence outside that chain of command would be excluded. Evidence of discrimination by other supervisors is neither per se prohibited nor admissible, but is fact based and depends in part on its relationship to the circumstances and theory of case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, --- U.S. ----, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008).

The present case contains no allegation of a pattern or practice of race discrimination by the defendant, and the evidence is not offered under Fed.R.Evid. 404(b). Evidence of how some supervisors other than Ms. Koerner or Mr. Michaelis treated other employees is not relevant because it cannot yield any inference that the stated reason for plaintiff's non-promotion was pretextual. Even assuming that the terminations of Mr. McBride and Ms. Wright were within a relevant time frame, the plaintiff has failed in its burden to establish that such evidence is logically or reasonably tied to the adverse employment action against plaintiff. Because no nexus between the defendant's treatment of these two employees and the plaintiff's theory of the case has been shown, this evidence will be inadmissible.

7

Even assuming that the proffered testimony had some probative value, its limited probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed.R.Evid. 403.

IT IS THEREFORE ORDERED that the defendant's motion in limine (Dk. 52) is granted in part and denied in part in accordance with the terms of this memorandum and order.

Dated this 15th day of June, 2010.

                                      s/ Sam A. Crow
                                      Sam A. Crow, U.S. District Senior Judge